# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

**Claude Raymond Dove,**
Petitioner
-vs-
**Charles L. Ryan, et al.,**
Respondents

CV-08-1914-PHX-MHM (JRI)

**REPORT & RECOMMENDATION**
**On Petition for Writ of Habeas Corpus**
**Pursuant to 28 U.S.C. § 2254**

## I. MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at Buckeye, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on October 17, 2008 (#1). Respondents have filed an Answer (#12) and a Supplemental Answer (#16). Petitioner has filed a Reply (#13) and a Supplemental Reply (#17).

The Petitioner's Petition is now ripe for consideration. Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND
### A. PROCEEDINGS AT TRIAL
### 1. Case 16160

Petitioner was indicted in Maricopa County Superior Court case number CR2004-016160 on one count of possession of cocaine for sale, and one count of possession with intent to use drug paraphernalia. (Exhibit C, Indictment 16160.) (Exhibits to the Answer (#12) (A to II) and Supplemental Answer (#16) (JJ to LL)are referenced herein as "Exhibit

___.") The state filed allegations of historical priors, alleging a series of three prior convictions, and an allegation that the offense was committed while on released on bond. (Exhibit E.) The Maricopa County Public Defender was appointed as counsel (Exhibit G), and on January 31, 2005 Petitioner proceeded to trial to the court and was found guilty on Count One, the Class 2 Felony. (Exhibit I, M.E. 1/31/05.) No verdict was entered on the Class 6 paraphernalia charge, and Petitioner successfully moved to dismiss the paraphernalia count. (Exhibit L, Motion & Order.)

Petitioner proceeded to sentencing on July 15, 2005. The court found four prior felony convictions, and sentenced Petitioner to 14 years imprisonment, concurrent with the sentence in the other pending case, CR2004-017353. (Exhibit K, Sentence.)

**2. Case 17353**

Petitioner was indicted in Maricopa County Superior Court case number CR 2004-017353 on one count of transportation of cocaine for sale. (Exhibit D, Indictment.) The state filed allegations of historical priors, alleging a series of four prior convictions (including case CR2004-016160). (Exhibit F.) The Maricopa County Public Defender was appointed as counsel (Exhibit H), and on January 325, 2005 Petitioner proceeded to trial to a jury and was found guilty. (Exhibit J, M.E. 1/28/05.)

Petitioner proceeded to sentencing on July 28, 2005. The court found four prior felony convictions, and sentenced Petitioner to 14 years imprisonment, concurrent with an identical sentence in the other pending case, CR2004-016160. (Exhibit JJ, Sentence.)

**3. Plea Negotiations and Burden of Proof on Prior Convictions**

**Settlement Conference** - Prior to trial, on October 8, 2004, a consolidated settlement conference was held in both cases. (Exhibit KK, R.T. 10/8/4.) The conference began with the judge reviewing the charges and noting that the State had alleged "two prior felony convictions." (*Id.* at 2.) In reviewing the potential sentencing on the felony charges, the judge stated:

if you're convicted at trial and the State proves the prior felony convictions, **and the State would have to prove those at the trial beyond a reasonable doubt**, the absolute minimum prison sentence for each of the Class 2 felonies is 10.5 years. The standard minimum is 14 years.

(*Id.* at 2-3 (emphasis added).)

The court went on to discuss the sentencing on the other charges, and the State's offer to allow Petitioner to plead to just the two class two felonies with an agreement to cap the sentence at concurrent presumptive sentences. (*Id.* at 3-4.) The court went on to explain the sentencing effect of the proffered plea:

So the maximum you'd be facing would be nine-and-a-quarter years for everything all wrapped up instead of 35 years on each of the Class 2 felonies. These occurred on separate occasions, so you could be sentenced to consecutive sentences if you're convicted of all this at a trial or trials, and the judge would be able to do that.

(*Id.* at 4.)

Petitioner declined to accept the offer. (*Id.* at 17-18.)

**Priors Trial** - At the bench trial on the historical priors, the State proffered evidence of four prior convictions. A trial was held on the priors, with the defense opposing two as stale and asserting that the state had failed to meed its burden of proving all but one of the others beyond a reasonable doubt. (Exhibit LL R.T. 7/15/05 at 24-27, 30.)   During the course of the proceeding, defense counsel argued that the State was required to prove the priors beyond a reasonable doubt, and that the State had failed to do so because fingerprints were provided only with respect to a single prior, and the use of a "pen pack" was improperly replied upon to prove the balance. The Arizona Court of Appeals described the "pen pack" as including "a certified 'Automated Summary Record' which summarized Dove's prior convictions and sentences, a certified prior conviction record, a series of photographs of Dove, a complete set of Dove's fingerprints. and a certification that all of these documents came from Dove's DOC master record file."  (Exhibit U, Mem. Dec. at 2.)

The judge disagreed on the burden of proof, but eventually recessed to research the matter. (*Id.* at 14-15, 30.) Eventually, the judge determined that the "the burden of proof on historical convictions is clear and convincing." (*Id.* at 31.)

The judge found that the state had "proved that the defendant has actually four prior felony convictions by clear and convincing evidence." (*Id.* at 32.) Nonetheless, Petitioner was sentenced on the basis of "two historical prior convictions" (*id.* at 33), which was sufficient to trigger the enhanced sentencing (*see* Exhibit U, Mem. Dec. at 3, n. 3, citing Ariz. Rev. Stat. § 13-604(D) ("two or more historical prior felony convictions")).

**B.  CONSOLIDATED PROCEEDINGS ON DIRECT APPEAL**

Petitioner filed notices of appeal in both cases. (Exhibits O and P.)  New counsel was appointed.  (Exhibit Q, M.E. 8/8/5.)   The appeals were consolidated, and a combined Opening Brief was filed by counsel, asserting insufficient evidence of the prior felony convictions, and abuse of discretion in failing to consider mitigating factors.  (Exhibit R.) The Arizona Court of Appeals rejected both claims, and affirmed Petitioner's sentences. (Exhibit U, Mem. Dec.)  Petitioner did not seek further review, and the mandate (Exhibit V) was issued on July 7, 2006.

**C.  CONSOLIDATED PROCEEDINGS ON POST-CONVICTION RELIEF**

In both cases, Petitioner then filed Notice of Post-Conviction Relief. (Exhibits W and X.)   The Office of the Public Defender was appointed to represent Petitioner, and the proceedings were consolidated.  (Exhibit Y, M.E. 6/26/6.)  Petitioner filed a PCR Petition (Exhibit X) raising a single claim of ineffective assistance of counsel, asserting that trial counsel had incorrectly advised Petitioner during plea negotiations on the state's burden of proof on prior convictions.  Petitioner cited no federal authority in support of his Petition. The Petition was summarily denied on December 8, 2006.  (Exhibit CC, Ruling.)

Petitioner filed through counsel a Petition for Review (Exhibit DD), again raising the single claim of ineffective assistance of trial counsel.  Petitioner cited a single federal authority, *U.S. v. Day*, 969 F.2d 39 (3rd Cir. 1992) for the proposition that relief on the claim was available even if Petitioner received a fair trial.  (Exhibit DD at 7.)  The Arizona Court of Appeals summarily denied review.  (Exhibit FF, Order 10/19/07.)

Petitioner then filed a *pro se* Petition for Review by the Arizona Supreme Court (Exhibit GG). Petitioner again raised the same claim of ineffective assistance. The Arizona Supreme Court summarily denied review. (Exhibit II, Order 4/1/8.)

**D. PRESENT FEDERAL HABEAS PROCEEDINGS**

Petitioner commenced the present case by filing on October 17, 2008 his Petition for Writ of Habeas Corpus pursuant 28 U.S.C. § 2254 (#1). Petitioner asserts three grounds for relief:

(1) Ineffective assistance of counsel based upon counsel's advice on the state's burden of proof to prove the prior conviction (#1 at 6);

(2) Insufficient evidence of the prior convictions (*id.* at 7); and

(3) Abuse of discretion by the trial court in failing to consider mitigating factors (*id.* at 8).

On March 5, 2009, Respondents filed their Answer (#12), conceding the timeliness of the petition, but arguing that Petitioner failed to exhaust his state remedies by asserting his federal claims to the state courts. Respondents argue the claims are now procedurally barred under Arizona's timeliness rules. Respondents do not address the merits of the claims, but do note that Grounds two and three do not assert federal claims.

On April 1, 2009, Petitioner filed his Reply (captioned "Response to States Answer to Habeas Corpus") (#13). Petitioner argues that his claims are inextricably intertwined, and that he identified the federal nature of his claims by citing *State v. Donald*, 198 Ariz. 406, 10 P.3d 1193 (App. 2000), and *U.S. v. Day*, 969 F.2d 39 (3rd Cir. 1992). Petitioner also addresses the merits of his claims.

**III. APPLICATION OF LAW TO FACTS**

**A. EXHAUSTION AND PROCEDURAL DEFAULT**

Respondents argue that Petitioner's claims are unexhausted, now procedurally defaulted, and thus barred from habeas review.

**1.  Exhaustion Requirement**

Generally, a federal court has authority to review a state prisoner's claims only if available state remedies have been exhausted.  *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*). The exhaustion doctrine, first developed in case law, has been codified at 28 U.S.C. § 2254(b) and (c).  When seeking habeas relief, the burden is on the petitioner to show that he has properly exhausted each claim.  *Cartwright v. Cupp,* 650 F.2d 1103, 1104 (9th Cir. 1981)(*per curiam*), *cert. denied,* 455 U.S. 1023 (1982).

**a.  Proper Forum/Proceeding**

Ordinarily,  "to exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32."  *Roettgen v. Copeland*,  33 F.3d 36, 38 (9th Cir. 1994).   Only one of these avenues of relief must be exhausted before bringing a habeas petition in federal court.   This is true even where alternative avenues of reviewing constitutional issues are still available in state court.  *Brown v. Easter*, 68 F.3d 1209, 1211 (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S. 1059 (1989). "In cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'" *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005)(quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir.1999)).

Respondents argue (Answer, #18 at 8, n.2) that presentation to the Arizona Supreme Court (not just the Arizona Court of Appeals) is required for exhaustion, citing *Baldwin v. v. Reese,* 541 U.S. 27, 30–33 (1999).  The Ninth Circuit's subsequent reliance on *Swoopes* in *Castillo*, notwithstanding *Baldwin*, dispels this argument. Moreover, nothing in *Baldwin* precludes the reasoning in *Swoopes*.  Nor does the language cited by Respondents from *State v. Ikirt*, 160 Ariz. 113, 117, 770 P.2d 1159, 1163 (1989), which predated the Arizona Supreme Court's decision in *State v. Sandon*, 161 Ariz. 157, 777 P.2d 220 (Ariz.1989), on which *Swoopes* is based.

/ /

### b.  Fair Presentment

To result in exhaustion, claims must not only be presented in the proper forum, but must be "fairly presented."  That is, the petitioner must provide the state courts with a "fair opportunity" to apply controlling legal principles to the facts bearing upon his constitutional claim.  28 U.S.C. § 2254;  *Picard v. Connor,* 404 U.S. 270, 276-277 (1971).  A claim has been fairly presented to the state's highest court if the petitioner has described both the operative facts and the federal legal theory on which the claim is based.  *Kelly v. Small*, 315 F.3d 1063, 1066 (9th Cir. 2003) (overruled on other grounds, *Robbins v. Carey*, 481 F.3d 1143, 1149 (9th Cir. 2007)).

While the petitioner need not recite "book and verse on the federal constitution," *Picard v. Connor*, 404 U.S. 270, 277-78 (1971) (quoting *Daugherty v. Gladden*, 257 F.2d 750, 758 (9th Cir. 1958)), it is not enough that all the facts necessary to support the federal claim were before the state courts or that a "somewhat similar state law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982)(per curiam).

On the other hand, both the federal and state courts are tasked with enforcement of the federal constitution.  *See Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003).  Thus, "a citation to a state case analyzing a federal constitutional issue serves the same purpose as a citation to a federal case analyzing such an issue. *Id.*

### c.  Application to Petitioner's Claims

**Ineffective Assistance** - In his Ground One, Petitioner argues that he received ineffective assistance of counsel based upon counsel's advice on the state's burden of proof to prove the prior conviction.[1]  (#1 at 6.)  Petitioner asserted the factual basis of this claim at each level of his PCR proceeding. (Exhibit X, PCR Pet., Exhibit DD, Pet. Rev.; Exhibit

---

[1]  Petitioner argues in his Reply that Respondents concede in their Answer that the claims were exhausted. (Reply, #17 at 3.)  To the contrary, Respondents merely concede that Petitioner did raise the grounds to the state courts, but argue that "he did not raise them as federal claims."  (Answer, #12 at 11.)

GG Pet. Rev. Sup. Ct.),. In asserting these claims, Petitioner never explicitly referenced the federal constitution in support of this claim. However, the state and federal cases cited by Petitioner were plainly founded upon federal constitutional law.

Petitioner cited *State v. Donald* (*see* Exhibit DD at 7), where the Arizona court held that "once the State engages in plea bargaining, the defendant has a *Sixth Amendment right* to be adequately informed of the consequences before deciding whether to accept or reject the offer." 198 Ariz. 406, 413, 10 P.3d 1193, 1200 (Ariz. App.2000) (emphasis added). The reference to the Sixth Amendment, as well as the *Donald* court's reliance upon *Strickland v. Washington*, 466 U.S. 668 (1984), *id.*, and myriad other federal ineffective assistance cases, makes clear that the court was applying federal constitutional law. While the Arizona Constitution does provide for a comparable right to counsel in criminal proceedings, that provision is located in Article 2, Section 24 of the Arizona Constitution. Ariz.Rev.Stat. Const. Art. 2 § 24 ("the accused shall have the right to appear and defend in person, and by counsel"). Moreover, amendments to the Arizona Constitution are engrossed in the Constitution, and are not identified as sequential amendments. See generally Ariz.Rev.Stat. Const. Thus the *Donald* court's reference to the "Sixth Amendment" was a plain indication of the federal nature of their analysis.

Petitioner also cited *U.S. v. Day*, 969 F.2d 39 (3rd Cir. 1992) (*see* Exhibit DD at 7), which was founded upon a defendant's "Sixth Amendment right not just to counsel, but to 'reasonably effective assistance' of counsel."

Respondents incorrectly argue that these citations were not sufficient because the state court was required to "read beyond the petition to be alerted to the federal claim." (Supp. Ans. #16 at 7 (citing *Baldwin v. Reese*, 541 U.S. 27, 32 (2004)).) *Baldwin* did not involve a brief which cited applicable authorities without explicitly naming the constitutional guarantee. Rather, *Baldwin* involved an appellate brief which made no connection to the petitioner's constitutional claim, and the state appellate court could "discover that claim only by reading lower court opinions in the case." 541 U.S. at 31. Petitioner did not leave the Arizona Court of Appeals to go sift through his other briefs to find his federal claim.

Respondents fail to refer this Court to the portions of *Baldwin* where the Court went on to explicate the ways in which a federal claim could be raised:

> A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim "federal."

541 U.S. at 32.

Here, Petitioner did just that. He "cit[ed] in conjunction with the claim . . . .a case deciding such a claim on federal grounds." *Id.* In fact he cited more than one such case, and offered no other basis for seeking review.

Respondents also complain that this was mere "drive-by citation," citing *Castillo v. McFadden*, 399 F.3d 993, 1003-03 (9th Cir. 2004). (Suppl. Ans. #16 at 7.) The *Castillo* court described the nature of their petitioner's purported presentation of his federal due process claim:

> The conclusion of Castillo's brief did no better in fairly presenting a federal due process claim to the Arizona Court of Appeals. The brief's parting sentence asserted that "[t]he gross violations of Appellant's Fifth, Sixth, and Fourteenth Amendment rights requires [sic] that his convictions and sentences be reversed and that he be granted a new trial consistent with due process of law." This conclusory, scattershot citation of federal constitutional provisions, divorced from any articulated federal legal theory, was the first time Castillo's brief used the words "due process" or "Fifth Amendment."
> Castillo, therefore, left the Arizona Court of Appeals to puzzle over how the Fifth, Sixth, and Fourteenth Amendments might relate to his three foregoing claims.

399 F.3d at 1002. Here, Petitioner did not offer some scattershot of citations in a concluding paragraph of his brief. Rather, in the heart of his brief he cited two cases, each based upon the Sixth Amendment right to effective assistance of counsel, each involving the same factual scenario (*i.e.* failure by counsel to properly advise on a plea offer), and Petitioner made specific arguments connected to each case. Instead of a drive-by spraying of citations, Petitioner drew a sniper's bead on authorities which plainly established the federal nature of his claims.

Moreover, Respondents ignore the explicit direction in *Castillo* about the efficacy of

citations to case law:

> Consistent with the recognition that state and federal courts are jointly responsible for interpreting and safeguarding constitutional guarantees, we have held that citation to either a federal or state case involving the legal standard for a federal constitutional violation is sufficient to establish exhaustion.

399 F.3d at 999.

Similarly, in their Answer in chief, Respondents argue that "the habeas petitioner must cite in state court to the specific constitutional guarantee upon which he wishes to base his claim in federal court." (Answer, #12 at 9 (citing *Tamalini v. Stewart*, 249 F.3d 895, 898 (9th Cir. 2001)). *Tamalini* did not mandate an explicit reference to a specific constitutional guarantee. To the contrary, *Tamalini* involved a situation where the petitioner had explicitly asserted Sixth Amendment ineffective assistance claims throughout his state briefs and to the district court, and then on habeas appeal attempted to convert his claims to ones asserting denials of due process and equal protection. *Tamilini* made no reference to the efficacy of citing to case authorities dealing with federal constitutional claims. To the extent that *Tamilini* could somehow be read to infer Respondents proposition, such inference would have been nullified in light of the explicit language in *Baldwin* and *Castillo*.

The undersigned finds that Petitioner fairly presented his ineffective assistance claim.

**<u>Insufficient Evidence of Prior Convictions</u>** - In his Ground Two, Petitioner argues that the reliance upon the "pen pack" to establish his prior convictions resulted in his conviction upon insufficient evidence. Although the Petition makes no reference to any specific constitutional guarantee, the undersigned liberally construes this to assert a claim that Petitioner's due process rights to conviction only "upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).[2] *See Laws v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003) (*pro se*

---

[2] The actual degree of proof for a prior conviction may not necessarily be "beyond a reasonable doubt." *See e.g. U.S. v. Ankeny*, 502 F.3d 829 (9th Cir. 2007) (declining to apply jury trial right and reasonable doubt standard to prior conviction under Armed Career Criminal Act). The Arizona courts have applied a clearing and convincing standard. (*See* Exhibit U, Mem. Dec. at 4.)

filings to be construed liberally).

Petitioner raised this claim on direct appeal, arguing that the "evidence of prior felony conviction [was] insufficient as a matter of law." (Exhibit R, Opening Brief at 8.) However, Petitioner did not cite any federal constitutional law in support of his arguments. He did not cite any apposite federal case law. He did cite *Apprendi v. New Jersey*, 530 U.. 466 (2000) and *Almendarrez-Torres v. United States*, 523 U.S. 224 (1998), but only in two footnotes to a quotation from a state case, *State v. Cons,* 208 Ariz. 409, 94 P.2d 609 (App. 2004), as explication of the references to those federal cases by single name in the quotation. (*See* Exhibit R at 12.) He also cited *Smalis v. Pennsylvania*, 476 U.S. 140 (1986), but only in his "Conclusion/Requested Relief" section for the proposition that upon a finding of insufficient evidence, double jeopardy requires entry of an acquittal. (Exhibit R at 17.)

None of the other state cases cited by Petitioner in his insufficiency arguments raised a federal claim of insufficient evidence, including *State v. Pennye*, 102 Ariz. 207, 427 P.2d 525 (1967); *State v. Van Adams*, 194 Ariz. 408, 419, 984 P.2d 16, 27 (1999); *State v. Terrell*, 156 Ariz. 499, 503, 753 P.2d 189, 193 (1988); *State v. Lee*, 114 Ariz. 101, 105, 559 P.2d 657, 661 (1976); *State v. Rockwell*, 161 Ariz. 5, 14, 775 P.2d 1069, 1078 (1989); *State v. McGriff*, 7 Ariz. App. 498, 441 P.2d 264 (1968); *Montgomery v. Eyman*, 96 Ariz. 55, 391 P.2d 915 (1964); *State v. Robinson,* 6 Ariz.App. 419, 433 P.2d 70 (1967); *State v. Palmer*, 5 Ariz.App. 192, 424 P.2d 840 (1967); *State v. Dixon,* 127 Ariz. 554,622 P.2d 501 (Ariz.App., 1980); *State ex rel. Collins v. Superior Court In and For Maricopa,* 157 Ariz. 71, 754 P.2d 1346 (1988); and *State v. Forteson*, 8 Ariz.App. 468, 447 P.2d 560 (1968).

Petitioner did cite *State v. Cons*, in which the court did rely upon federal law as determined in *Apprendi* and *Almendarez-Torres* to conclude that proof "beyond a reasonable doubt" of a prior conviction was not constitutionally mandated. 208 Ariz. 409, 413-414, 94 P.3d 609, 613-614 (App. 2004). However, the court then concluded that there was no controlling law on what burden of proof should apply, and thus elected a "clear and convincing" standard for the State of Arizona. Only after doing so did the *Cons* court "turn to the sufficiency of the evidence" on the prior convictions. *Id.* at 415, 94 P.3d at 615. Once

on to that issue, no reliance was made upon any federal law. It was for the limited purpose of acknowledging the exemption of prior convictions from the jury trial right that Petitioner referenced that section of *Cons* which relied upon *Apprendi* and *Almendarez-Torres*. (Exhibit R at 12.)

Similarly, Petitioner's citations to *Newkirk v. Nothwehr,* 210 Ariz. 601, 604, 115 P.3d 1264, 1267 (App. 2005)*, and State v. Cox*, 201 Ariz. 464, 37 P.3d 437 (app. 2002), did not raise a federal claim of insufficient evidence. Both cases cited to *Apprendi* and related federal cases, but did so only for the proposition that there was no right to a jury trial on prior convictions.

None of the other state cases cited by Petitioner in his insufficiency arguments raised a federal claim of insufficient evidence, including *State v. Pennye*, 102 Ariz. 207, 427 P.2d 525 (1967); *State v. Van Adams*, 194 Ariz. 408, 419, 984 P.2d 16, 27 (1999); *State v. Terrell*, 156 Ariz. 499, 503, 753 P.2d 189, 193 (1988); *State v. Lee*, 114 Ariz. 101, 105, 559 P.2d 657, 661 (1976); *State v. Rockwell*, 161 Ariz. 5, 14, 775 P.2d 1069, 1078 (1989); *State v. McGriff*, 7 Ariz. App. 498, 441 P.2d 264 (1968); *Montgomery v. Eyman*, 96 Ariz. 55, 391 P.2d 915 (1964); *State v. Robinson,* 6 Ariz.App. 419, 433 P.2d 70 (1967); *State v. Palmer*, 5 Ariz.App. 192, 424 P.2d 840 (1967); *State v. Dixon,* 127 Ariz. 554,622 P.2d 501 (Ariz.App., 1980); *State ex rel. Collins v. Superior Court In and For Maricopa,* 157 Ariz. 71, 754 P.2d 1346 (1988); and *State v. Forteson*, 8 Ariz.App. 468, 447 P.2d 560 (1968).

Petitioner did make additional arguments in his Reply Brief based upon *Shepherd v. United States*, 544 U.S. 13 (2005), and noted that court's reliance upon *Apprendi* and related cases. (Exhibit T, Reply Brief at 3-4.) However, that argument was limited to asserting that when ascertaining the nature of a prior conviction, courts cannot rely upon "non-judicial documents such as the ADC 'pen pack'." (*Id.* at 4.) Petitioner did not assert that federal law mandated sufficient evidence, as opposed to suggesting that it precluded consideration of certain types of evidence. Moreover, presentation of a new claim for the first time in a reply brief is not fair presentation, because such claims are considered waived by the Arizona courts. *See e.g. State v. Lopez*, 223 Ariz. 238, 221 P.3d 1052, 1054 (App. 2009).

"Submitting a new claim to the state's highest court in a procedural context in which its merits will not be considered absent special circumstances does not constitute fair presentation."  *Roettgen v. Copeland*,  33 F.3d 36, 38 (9th Cir. 1994).

Based upon the foregoing, the undersigned cannot find that Petitioner fairly presented a federal claim of insufficient evidence on the issue of his prior convictions.

A state court's actual consideration of a claim satisfies exhaustion. *See Sandstrom v. Butterworth*, 738 F.2d 1200, 1206 (11th Cir.1984) ("[t]here is no better evidence of exhaustion than a state court's actual consideration of the relevant constitutional issue").  The undesigned does note that in disposing of Petitioner's insufficiency claim, the Arizona Court of Appeals cited *Apprendi*.  However, that reference was solely to note that "[t]he existence of prior convictions may be determined by the trial court, and need not be submitted to the jury."  (Exhibit U, Mem. Dec. at 4.)

Accordingly, the undersigned concludes that Petitioner's Ground Two is unexhausted.

**Mitigating Factors** - In his Ground Three, Petitioner argues that the trial court abused its discretion by failing to consider various mitigating factors (Petition, #1  at 8.)  Petitioner makes no reference to any federal constitutional guarantee, and the undersigned discerns none.  While it is true that consideration of mitigating factors is mandated by the Eighth Amendment prohibition against cruel and unusual punishment, *see.e.g. Graham v. Collins*, 506 U.S. 461, 479 *et seq.* (2006) (Thomas, J., concurring)(discussing evolution of the mitigating factors jurisprudence), the undersigned is not aware of any extension of this requirement outside the death penalty arena. *Cf. Wasman v. U.S.*, 468 U.S. 559, 563 (1984) (sentencing judge "must be *permitted* to consider" mitigating evidence).  Similarly, the federal courts are required under the Sentencing Guidelines to consider at least some mitigating factors, *see e.g. U.S. v. Carty*, 520 F.3d 984, 991-993 (9th Cir. 2008), however the U.S. Sentencing Guidelines do not govern state court sentences.

Nonetheless, this Court need not pigeon-hole Petitioner's current claim to conclude that no federal claim has been exhausted on the facts argued by Petitioner..

Petitioner raised the core facts of this claim on direct appeal.  However, he did not cast

it in terms of a constitutional violation, but simply argued that by failing to consider mitigating factors the trial court "abused its discretion." (Exhibit R, Opening Brief at 14-17.) However, Petitioner referenced no federal constitutional provision and no federal authorities in support of this claim.

None of the state cases cited by Petitioner raised a federal claim. *See State v. Long*, 207 Ariz. 140, 148, 83 P,3d 618, 626 (App.2004) (discussing Eighth Amendment, but deciding obligation to consider mitigating evidence on state grounds); *State v. Fatty,* 150 Ariz. 587, 724 P.2d 1256 (App.1986); *State v. Patton*, 120 Ariz. 386, 586 P.2d 635 (1978); *State v. Scrivner*, 125 Ariz. 508, 510-511, 611 P.2d 95, 96-97 (App.1979); *State v. Thurlow*, 148 Ariz. 16, 19, 712 P.2d 929, 932 (1986); *State v. De La Gaza*, 138 Ariz. 408, 675 P.2d 295 (App.1983)and *State v. Just*, 138 Ariz. 534, 551, 675 P.2d 1353, 1370 (App.1983).

Petitioner did cite to *State v. Dann*, 206 Ariz. 371, 374, 79 P.2d 58, 61 (2003) and *State v. Sansing*, 206 Ariz. 232, 77 P.3d 30 (2003). Both of these were death penalty cases which touched upon federal death penalty law. In addition, Petitioner cited *State v. Timmons*, 209 Ariz. 403, 103 P.3d 315 (App.2004), which discussed various *Apprendi* issues. However, Petitioner cited each of these cases solely for the proposition that family and community support could be appropriate mitigating factors, and not for any assertion that consideration of them was mandated by federal law or otherwise. (Exhibit R, Opening Brief at 15-16.)

Accordingly, the undersigned finds that Petitioner failed to fairly present a federal claim attacking the trial court's failure to consider mitigating factors.

### d. Summary re Exhaustion

Based on the foregoing, the undersigned has concluded that Petitioner's state remedies on Ground One were properly exhausted, but his state remedies on Grounds Two and Three were not properly exhausted.

### 2. Procedural Default

Ordinarily, unexhausted claims are dismissed *without prejudice*. *Johnson v. Lewis*,

929 F.2d 460, 463 (9th Cir. 1991).  However, where a petitioner has failed to properly exhaust his available administrative or judicial remedies, and those remedies are now no longer available because of some procedural bar, the petitioner has "procedurally defaulted" and is generally barred from seeking habeas relief.  Dismissal *with prejudice* of a procedurally barred or procedurally defaulted habeas claim is generally proper absent a "miscarriage of justice" which would  excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

Respondents argue that Petitioner may no longer present his unexhausted claims to the state courts.  Respondents rely upon Arizona's preclusion bar, set out in Ariz. R. Crim. Proc. 32.2(a), and its timeliness bar in Ariz. R. Crim. P.  32.4.  (Answer, #12 at 10, 12-13.)

**Remedies by Direct Appeal** - Under Ariz.R.Crim.P. 31.3, the time for filing a direct appeal expires twenty days after entry of the judgment and sentence.  The Arizona Rules of Criminal Procedure do not provide for a successive direct appeal.  *See generally* Ariz.R.Crim.P. 31.  Accordingly, direct appeal is no longer available for review of Petitioner's unexhausted claims.

**Remedies by Post-Conviction Relief** - Petitioner can no longer seek review by a subsequent PCR Petition.

Waiver Bar - Under the rules applicable to Arizona's post-conviction process, a claim may not ordinarily be brought in a petition for post conviction relief that  "has been waived at trial, on appeal, or in any previous collateral proceeding."   Ariz.R.Crim.P. 32.2(a)(3). Under this rule,  some claims may be deemed waived if the State simply shows "that the defendant did not raise the error at trial, on appeal, or in a previous collateral proceeding." *Stewart v. Smith*,  202 Ariz. 446, 449, 46 P.3d 1067, 1070 (2002) (quoting Ariz.R.Crim.P. 32.2, Comments).  For others of "sufficient constitutional magnitude," the State "must show that the defendant personally, "knowingly, voluntarily and intelligently' [did] not raise' the ground or denial of a right."  *Id.*  That requirement is limited to those constitutional rights "that can only be waived by a defendant personally."  *State v. Swoopes*  216 Ariz. 390, 399, 166 P.3d 945, 954 (App.Div. 2, 2007).  Indeed, in coming to its prescription in *Stewart v.*

*Smith*, the Arizona Supreme Court identified: (1) waiver of the right to counsel, (2) waiver of the right to a jury trial, and (3) waiver of the right to a twelve-person jury under the Arizona Constitution, as among those rights which require a personal waiver. 202 Ariz. at 450, 46 P.3d at 1071.[3]

Here, Petitioner's unexhausted claims do not fit within the list of claims identified as requiring a personal waiver. Nor are they of the same character. Therefore, it appears that Petitioner's claims would be precluded by his failure to raise them in an earlier proceeding.

Timeliness Bar - Even if not barred by preclusion, Petitioner would now be barred from raising his claims by Arizona's time bars. Ariz.R.Crim.P. 32.4 requires that petitions for post-conviction relief (other than those which are "of-right") be filed "within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is the later." *See State v. Pruett*, 185 Ariz. 128, 912 P.2d 1357 (App. 1995) (applying 32.4 to successive petition, and noting that first petition of pleading defendant deemed direct appeal for purposes of the rule). That time has long since passed.

Exceptions - Rules 32.2 and 32.4(a) do not bar dilatory claims if they fall within the category of claims specified in Ariz.R.Crim.P. 32.1(d) through (h). *See* Ariz. R. Crim. P. 32.2(b) (exceptions to preclusion bar); Ariz. R. Crim. P. 32.4(a) (exceptions to timeliness bar). Petitioner has not asserted that any of these exceptions are applicable to his claims. Nor, with one exception, does it appears that such exceptions would apply. The rule defines the excepted claims as follows:

d. The person is being held in custody after the sentence imposed has

---

[3] Some types of claims addressed by the Arizona Courts in resolving the type of waiver required include: ineffective assistance (waived by omission), *Stewart,* 202 Ariz. at 450, 46 P.3d at 1071; right to be present at non-critical stages (waived by omission), *Swoopes*, 216Ariz. at 403, 166 P.3d at 958; improper withdrawal of plea offer (waived by omission), *State v. Spinosa*, 200 Ariz. 503, 29 P.3d 278 (App. 2001); double jeopardy (waived by omission), *State v. Stokes*, 2007 WL 5596552 (App. 10/16/07); illegal sentence (waived by omission), *State v. Brashier*, 2009 WL 794501 (App. 2009); judge conflict of interest (waived by omission), *State v. Westmiller*, 2008 WL 2651659 (App. 2008).

expired;

e. Newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence. Newly discovered material facts exist if:

(1) The newly discovered material facts were discovered after the trial.

(2) The defendant exercised due diligence in securing the newly discovered material facts.

(3) The newly discovered material facts are not merely cumulative or used solely for impeachment, unless the impeachment evidence substantially undermines testimony which was of critical significance at trial such that the evidence probably would have changed the verdict or sentence.

f. The defendant's failure to file a notice of post-conviction relief of-right or notice of appeal within the prescribed time was without fault on the defendant's part; or

g. There has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence; or

h. The defendant demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found defendant guilty of the underlying offense beyond a reasonable doubt, or that the court would not have imposed the death penalty.

Ariz.R.Crim.P. 32.1.

Paragraph 32.1 (d) (expired sentence) generally has no application to an Arizona prisoner who is simply attacking the validity of his conviction or sentence. Where a claim is based on "newly discovered evidence" that has previously been presented to the state courts, the evidence is no longer "newly discovered" and paragraph (e) has no application. Paragraph (f) has no application where the petitioner filed a timely notice of appeal. Paragraph (g) has no application because Petitioner has not asserted a change in the law. Finally, paragraph (h), concerning claims of actual innocence, has no application to Petitioner's procedural claims. *See State v. Swoopes*, 216 Ariz. 390, 404, 166 P.3d 945, 959 (App. 2007) (32.1(h) did not apply where petitioner had " not established that trial error ...amounts to a claim of actual innocence").

Summary - Accordingly, the undersigned must conclude that review through Arizona's direct appeal and post-conviction relief process is no longer possible for Petitioner's unexhausted claims.

**Summary re Procedural Default** - Petitioner failed to exhaust his federal claims in Grounds Two and Three and is now procedurally barred from doing so. Accordingly, these

unexhausted claims are procedurally defaulted, and absent a showing of cause and prejudice or actual innocence, must be dismissed with prejudice.

### 3. Cause and Prejudice

If the habeas petitioner has procedurally defaulted on a claim, or it has been procedurally barred on independent and adequate state grounds, he may not obtain federal habeas review of that claim absent a showing of "cause and prejudice" sufficient to excuse the default. *Reed v. Ross*, 468 U.S. 1, 11 (1984). Although both "cause" and "prejudice" must be shown to excuse a procedural default, a court need not examine the existence of prejudice if the petitioner fails to establish cause. *Engle v. Isaac*, 456 U.S. 107, 134 n. 43 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 n. 10 (9th Cir.1991).

"Cause" is the legitimate excuse for the default. *Thomas*, 945 F.2d at 1123. "Because of the wide variety of contexts in which a procedural default can occur, the Supreme Court 'has not given the term "cause" precise content.'" *Harmon v. Barton*, 894 F.2d 1268, 1274 (11th Cir. 1990) (quoting *Reed*, 468 U.S. at 13), *cert. denied*, 498 U.S. 832 (1990). The Supreme Court has suggested, however, that cause should ordinarily turn on some objective factor external to petitioner, for instance:

> ... a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that "some interference by officials", made compliance impracticable, would constitute cause under this standard.

*Murray v. Carrier*, 477 U.S. 478, 488 (1986) (citations omitted).

Here, Petitioner does not assert any cause to excuse his failure to exhaust. To be sure, Petitioner argues at length that he was wrongly denied an evidentiary hearing on his PCR petition. (Supp. Reply, #17 at 4-8.) However, any such failure did not prevent Petitioner from asserting his federal claims in the first instance. A grant of an evidentiary hearing would not have resulted in presentation of his now asserted federal claims. Thus, Petitioner has failed to show "cause" to excuse his failure to properly exhaust his state remedies, and is not entitled to be relieved from his procedural defaults under the "cause and prejudice" standard.

**4. Actual Innocence**

The standard for "cause and prejudice" is one of discretion intended to be flexible and yielding to exceptional circumstances. *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986). Accordingly, failure to establish cause may be excused "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (emphasis added). Petitioner makes no assertion of his actual innocence, and thus remains subject to the effect of his procedural defaults.

**5. Summary re Procedural Default**

Petitioner properly exhausted his ineffective assistance of counsel claim in Ground One. Petitioner has procedurally defaulted on his claims in Grounds Two and Three and has failed to establish cause and prejudice or actual innocence to excuse his procedural default. Accordingly, these procedurally defaulted grounds must be dismissed with prejudice.

**B. GROUND ONE - INEFFECTIVE ASSISTANCE OF COUNSEL**

In his Ground One, Petitioner asserts that trial counsel was ineffective in failing to properly advise Petitioner on the burden of proof for prior convictions, resulting in Petitioner rejecting a favorable plea offer. (Petition, #1 at 6.)

**1. Standard of Review**

The AEDPA creates a limit on what errors entitle a state prisoner to relief. Relief is only warranted if the state court's decision of a matter was "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §2254(d)(1)

This claim was presented in Petitioner's first PCR proceeding. (Exhibit X, PCR Pet.; Exhibit DD, Pet.Rev.) The trial court issued a summary denial (Exhibit CC, Order 12/8/6), as did the Arizona Court of Appeals (Exhibit FF, Order 10/19/07) and the Arizona Supreme

Court (Exhibit II, Order 4/1/8).

Where there is no reasoned rejection of the claim, it is impossible to ascertain whether the state court identified the correct law, or whether they applied it reasonably. This Court is left to applying its own evaluation, comparing the outcome to that of the state court, and only then if there is a discrepancy can this court begin to evaluate whether the state court outcome was "contrary to or an unreasonable application of" Supreme Court law. *See Himes v. Thompson*, 336 F.3d 848, 853 and n.3 (9th Cir. 2003) ("Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable"). *See also Wilson v. Czerniak*, 355 F.3d 1151, 1154 (9th Cir. 2004).

In *Nunes v. Mueller*, the Ninth Circuit acknowledged that Supreme Court law has never explicitly addressed whether the right of effective assistance of counsel extends to a decision to reject a plea offer, and thus a state court decision rejecting such a claim could not be "contrary to" Supreme Court law. 350 F.3d 1045, 1053 (9th Cir. 2003). Nonetheless, the *Nunes* court recognized that such a claim is cognizable under *Strickland* and went on to evaluate the state court's decision under the "unreasonable application" prong of § 2254(d)(1).

Because there was no reasoned rejection of Petitioner's claim, this Court must undertake its own evaluation of Petitioner's claim.

**2. Standard for Ineffective Assistance**

Generally, claims of ineffective assistance of counsel are analyzed pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail on such a claim, Petitioner must show: (1) deficient performance - counsel's representation fell below the objective standard for reasonableness; and (2) prejudice - there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 687-88. Although the petitioner must prove both elements, a court may reject his claim upon finding either that counsel's performance was reasonable or that the

1  claimed error was not prejudicial.  Id. at 697.

2

3  **3.  Application to Petitioner's Claim**

4       Respondents contend that this clam is without merit because: (1) the erroneous advice
5  on the burden of proof on prior convictions came after the plea agreement expired; (2) there
6  is no evidence to support Petitioner's contention that the erroneous advice affected his
7  decision to reject the plea offer, because Petitioner rejected the plea on the basis that it would
8  result in a nine year sentence. (Supp. Answer, #16 at 13-16.)   Moreover, Respondents
9  contend that the state court's decision must be upheld because the result reached was not
10 objectively unreasonable.

11      **Method of Applying *Strickland* Unreasonable** - However, a tenable conclusion is
12 not the only the hallmark of an objectively reasonable decision.  As recognized in *Nunes v.*
13 *Mueller*, 350 F.3d 1045 (9th Cir. 2003), "[u]nder the AEDPA standard of review, it is entirely
14 appropriate-even necessary-that federal courts ask whether the state court applied correct
15 legal principles (in this case, the *Strickland* analysis) in an objectively unreasonable way, an
16 inquiry that requires analysis of the state court's *method* as well as its result." *Id.* at 1054
17 (citations omitted, emphasis in original).  The *Nunes* court found that the California court had
18 applied *Strickland* unreasonably because it summarily rejected the petitioner's claim of
19 ineffectiveness in a rejected plea despite the fact that the Petitioner had "clearly made out a
20 prima facie case of ineffective assistance of counsel under *Strickland*." (*Id.*)

21      Here, the trial court rejected Petitioner's ineffective assistance claim on the basis that
22 Petitioner  "failed to present a colorable claim for relief."  (Exhibit CC, Order 12/8/6.)   As
23 a result, Petitioner was not permitted an evidentiary hearing, and the court did not evaluate
24 the evidence underlying his claims.

25      However, Petitioner's assertion that trial counsel rendered defective advice and
26 resulted in his rejection of a plea he would have otherwise accepted, laid out an ineffective
27 assistance claim under *Strickland*.  No other fact need have been alleged to make out such
28 a claim.

An Arizona PCR petition is not required, under the Arizona Rules of Criminal Procedure to contain conclusive evidence supporting a claim nor even all evidence a petitioner hopes to present in support of his claim.

> A defendant is entitled to an evidentiary hearing when he presents a colorable claim, that is a claim which, if defendant's allegations are true, might have changed the outcome. When doubts exist, "a hearing should be held to allow the defendant to raise the relevant issues, to resolve the matter, and to make a record for review."

*State v. Watton,* 164 Ariz. 323, 328, 793 P.2d 80, 85 (1990) (internal citations omitted).  The PCR court was "obligated to treat his factual allegations as true." *State v. Jackson,* 209 Ariz. 13, 15-16, 97 P.3d 113, 115-116 (App. 2004).  *See also State v. Richmond*, 114 Ariz. 186, 194, 560 P.2d 41, 49 (1976), *overruled on other grounds, State v. Salazar,* 173 Ariz.399, 416, 844 P.2d 566, 583 (1992) ("To be colorable, a claim has to have the appearance of validity, i.e., if the defendant's allegations are taken as true, would they change the verdict?").

The evidentiary requirements for supporting a petition are far from strenuous:

> Facts within the defendant's personal knowledge shall be noted separately from other allegations of fact and shall be under oath. Affidavits, records, or other evidence currently available to the defendant supporting the allegations of the petition shall be attached to it.

Ariz. R. Crim. P.  32.5.

Here, Petitioner made out essentially the same allegations as the petitioner in *Nunes*:

> With Nunes' claims being taken at face value as the state court claimed it had done, the factual scenario was (1) that Nunes' attorney gave him the wrong information and advice about the state's plea offer and (2) that if Nunes had instead been informed accurately, he would expressly have taken the bargain.

350 F.3d at 1054.  The only difference in Petitioner's allegations were that  the claimed error was not on the plea offer itself, but on the alternatives to that offer. Despite those allegations, the Arizona court concluded that Petitioner had failed to make out a colorable claim. "With the state court having purported to evaluate [Petitioner's] claim for sufficiency alone, it should not have required [Petitioner] to prove his claim without affording him an evidentiary hearing." *Nunes*, 350 F.3d at 1054.  Refusing to do so was an objectively unreasonable application of *Strickland*.

However, while an unreasonable application of Supreme Court law is necessary to habeas relief, it is not sufficient. Petitioner must still show to this Court that his claim is meritorious.[4]

**<u>Defective Performance</u>** - Petitioner contends that he rejected the plea offer of a maximum of 9.25 years in prison based upon trial counsel's advice that the state would have to prove his prior convictions "beyond a reasonable doubt" and that the evidence they had available, *i.e.* the ADC "pen pack" would not meet that burden. As it turned out, some three months before Petitioner's settlement conference, the Arizona Court of Appeals had determined that the actual burden of proof was "clear and convincing." *See State v. Cons*, 208 Ariz. 409, 94 P.3d 609 (App. 2004) (decided July 22, 2004).

<u>Timing of Advice</u> - Respondents contend that the erroneous advice came after the plea offer had already expired. They point to the fact that the only time this advice was given on the record was at the sentencing proceedings in July, 2005, long after the plea offer purportedly had expired.[5] (Suppl. Ans. #16 at 14.) They argue that Petitioner "rejected" the offer at the settlement conference on October 8, 2004.[6]

However, the advice need not have been on the record to support Petitioner's claim. *See Nunes*, 350 F.3d at 1055, n.6 (observing the tension between *Strickland* and a rule requiring evidence beyond a defendant's own statement). Petitioner points to the fact that prior to Petitioner's declining to accept the plea offer, the trial judge had advised Petitioner,

---

[4] In *Nunes*, the district court had concluded that the ineffective assistance claim was meritorious, and thus the dispute on appeal focused on whether the requirements of 28 U.S.C. § 2254(d) had been met.

[5] At the settlement conference, the prosecutor agreed to extend the deadline for excepting the offer through the following Monday. (Exhibit KK, R.T. 10/8/4.)

[6] It is not clear to the undersigned that the plea was "rejected." The transcript simply reveals that Petitioner declined to accept it at the time of the hearing. The conclusion of the hearing was:
THE COURT: I take it you don't want to accept it today?
THE DEFENDANT: No, No.
THE COURT: All right. Have a nice weekend.
THE DEFENDANT: All right. You, too.

without correction by trial counsel, that "the State would have to prove [the prior felony convictions] at trial beyond a reasonable doubt." (Exhibit KK, R.T. 10/8/04 at 2-3.)  (*See* Petition, #1 at 7.)  Corroboration of Petitioner's allegations flows from the fact that counsel continued to argue the erroneous position at sentencing.  Nonetheless, the undersigned is not prepared to finally determine the timing (or even the existence) of such advice without an evidentiary hearing to evaluate Petitioner's credibility, and without any testimony by trial counsel.

Regardless, this Court need not resolve the timing issue to resolve Petitioner's claim.

**<u>Prejudice</u>** - Petitioner must not only show deficient performance, but prejudice.  To establish prejudice from incorrect advice resulting in rejection of a plea offer, Petitioner "must show that there is a reasonable probability that he would have accepted the plea agreement had he received accurate advice from his attorney." *Hoffman v. Arave,* 455 F.3d 926, 941-942 (9th Cir. 2006), *judgment vacated in part on other grounds by Arave v. Hoffman*, 128 S.Ct. 749 (2008).  Respondents argue that Petitioner would have rejected the plea offer even with the correct advice, pointing to his aversion to going "to prison for nine years, signing my life away for nine years."  (Exhibit KK, R.T. 10/8/4 at 16.)  .

Of course, in his verified Petition (#1 at 6) and in his verified Supplemental Reply, Petitioner avows that "[h]ad petitioner been furnished accurate information before and at his Settlement Conference Hearing, this petitioner would have accepted the State's Plea Offer." (#17 at 21.)  However, this Court is not obligated to accept Petitioner's bare, after-the-fact assertion, but is required to evaluate all the circumstances. *Cf. Hill v. Lockhart,* 474 U.S. 52, 59 (1985) (court required to assess likelihood of different decision in instance where plea *accepted* on basis of bad advice).

Here, Petitioner's underlying contention is that he decided to go to trial on the erroneous conclusion that he could get a better deal at trial by, in part, successfully defeating the State's allegations of prior convictions because the State's offer of evidence, namely the ADC "pen pack", did not provide proof beyond a reasonable doubt of all the prior convictions alleged. However, Petitioner specifically argues that trial counsel "had explained

to petitioner prior to the Settlement Conference, 'that he should not take that particular plea offer of the pleading guilty to the two (2) Class-II felony's with One (1) prior conviction for the presumptive term of Nine-and-a-Quarter (9.25) years where the State's Pen Pack (in presumed error) only contained one (1) photograph, One (1) Set of Finger-prints, of One specific Conviction which could only prove One (1) Prior Conviction.' " (Supp. Reply, #17 at 10.) Thus, under Petitioner's version of the facts, he proceeded to trial on the assumption that the state would only be able to prove one prior conviction.

Plea Range - The plea offer provided for Petitioner to plead to the two Class 2 felony charges with one prior felony conviction, dismiss the Class 6 paraphernalia charge, and stipulate to concurrent sentences capped at the presumptive. That resulted in an effective sentencing range of **4.5 to 9.25 years**, with a presumptive concurrent sentence of **9.25 years**. (Exhibit KK, R.T. 10/8/4 at 3-4.)

Assumed Range - Petitioner claims that he was led to believe that if he rejected the plea offer and was convicted, he would face sentencing on the basis of only one prior felony. With just one prior conviction, Petitioner would have faced sentences of 4.5 to 23.25 years on each Class 2 felony, and .75 to 2.75 years on the Class 6 felony, which if consecutive would be a sentencing range of **5.25 to 49.25 years**, with a presumptive concurrent sentence of **9.25 years**.[7] (Supp. Rep. Exh. G, Sentencing Table) *See also* Ariz. Rev. Stat. § 13-702.01 (2003) (repealed effective 1/1/09).

Actual Range - Finally, based upon the finding of two or more priors, Petitioner ultimately faced a sentencing range of 10.5 to 35 years on each Class 2 felony, and 2.25 to 5.75 years on the Class 6 felony, for an effective range of **12.75 to 75.75 years**, with a concurrent presumptive sentence of **15.75 years**. (Supp. Rep. Exh. G, Sentencing Table; Exhibit KK, R.T. 10/8/4 at 3.) *See also* Ariz. Rev. Stat. § 13-702.01 (2003) (repealed effective 1/1/09).

Given the disparity between the assumed sentencing range at trial and the actual

---

[7] Arizona courts have discretion to select either consecutive or concurrent sentences. *State v. Gaza*, 192 Ariz. 171, 174-175, 962 P.2d 898, 901-901 (1998).

range, and the lack of disparity between the offered plea sentencing range and the assumed trial range, it is not unreasonable to believe that a defendant might elect trial under the assumed trial sentencing range, but would have chosen the plea had he known the actual sentencing range.

That is particularly so where, as here, the defendant believed there were substantive defenses to be exploited at trial. For example, at the settlement conference, Petitioner, counsel and the court discussed the potential for a motion to suppress, and an entrapment defense.[8] (Exhibit KK, R.T. 10/8/4 at 14-17.)

Based solely upon the foregoing, the undersigned might be able to conclude that there is a reasonable probability that but for counsel's erroneous advice Petitioner would have accepted the plea offer.

However, by the time that trial was prepared to begin, Petitioner had experienced a change of heart and was seeking to revive the plea offer. (Supp. Reply, #17 Exhibit H, R.T.17/25/05 at 6-10; Exhibit LL R.T. 7/15/05 at 50-51.) Other than the proximity of trial, the only thing that had changed was Petitioner's loss of his suppression motion. (Exhibit A, Docket at items 30-32.) Petitioner (and, based upon his arguments at sentencing, counsel) continued to believe at that time that the priors required proof beyond a reasonable doubt. This suggests that the burden of proof issue was at least not the sole basis for declining the plea offer.

Moreover, the record reflects that Petitioner and counsel were not focused on the potential exposure at trial, but were preoccupied with the belief that the prosecutor was being unusually harsh in his dealings with Petitioner, and that a better plea offer could eventually be obtained. That was a centerpiece of Petitioner's explicit reasoning in declining the plea at the settlement conference:

---

[8] Petitioner goes to some lengths to explain why there was no assertion by him or counsel of the lack of evidence on the prior convictions, arguing that to do so would have alerted the prosecution to the weakness in their evidence on the priors while they still had time to shore it up. (Supp. Reply, #17 at 8-15.) That explanation is plausible, but does not alter the undersigned's conclusions.

1    THE DEFENDANT: . . . It was like nine people that has been
     arrested at the same time as I was, and none of them have gotten nine
2    years for the little rock they had. People have gone home on probation.

3  (Exhibit KK, R.T. 10/8/4 at 8.)

4            THE DEFENDANT: . . .But yet you want to lock me away
     forever. But people who have pounds, tons of cocaine are getting
5    probation. I don't think it's fair.
             THE COURT: Well, let me interrupt you, Mr. Dove, because
6    your argument isn't with me. Your argument is with them. I
     understand I asked you if you had any questions, but they control the
7    plea offer that they make. I can't tell the State what to offer you, and
     this is the best they are offering. And if they don't - -
8            MR. TERPSTRA [defense counsel]: I'm sorry , judge. I think
     it should be clear, as I have told your Honor and Mr. Dove, and the
9    record should be clear, the things Mr. Dove is saying I have brought to
     the attention of [the prosecutor] Mr. Yost. And the names he's given
10   me of the other people arrested, I followed up on and talked to their
     attorneys and brought it to the attention of Mr. Yost to show just these
11   things.

12  (*Id.* at 9.)

13           THE DEFNDANT: Okay, I understand what you just said. But
     if they are so bad on drug offenders, why the people that got arrested
14   with me went home on probation? If they so bad on drug offenders,
     they should be locked up along with me. That's all I am saying. I just
15   think there is favoritism being played here. Something is going on
     here.

16  (*Id.* at 11.)

17       Even at the time of trial, it was suggested that the reason for the rejection of the plea

18  was not based upon an evaluation of the plea versus trial, but on the belief that a better plea

19  would be offered.

20           MR. TERPSTRA: . . . We had a settlement conference
     previously with Judge Howser [sic] and Mr. Dove rejected the offer at
21   that time. We've had a further discussion, myself and Mr. Yost and
     Mr. Dove about trying to make an improvement on the offer. Mr. Yost
22   has consistently not be [sic] willing to improve on the offer that had
     been extended.
23           Today, the morning of trial, Mr. Dove expressed to me
     that he would like to take that offer, would like to take that plea bargain
24   as it had been offered. I explained to him, as he knew, the deal had
     been off the table. I also told him that we could try and get it back.
25

26  (Supp. Reply, #17, Exhibit H, R.T. 1/25/05 at 7-8.)

27           THE WITNESS [Petitioner]: Yes. I really don't have no excuse
     for what I did, I was suffering from a disease. I'm not a drug seller at
28   all, I was hooked on crack cocaine. I didn't quite understand what was

going on because it was a sting operation that got a lot of smokers off the street, like ten of us got locked up the same day. ***All the people that got locked up, the most any of them got was three years or probation and they wanted me to do nine years, that's why I didn't want to take the plea bargain***. I thought they would give me three years, too. The rest of the people involved was smoking drugs just like me and they got three years and two years and they want to give me nine years.

I would like to take, if I could, take the plea bargain now because if I lose, I'm going to get more than nine years so - -

(*Id.* at 9 (emphasis added).)

At sentencing, trial counsel pursued this line so far as to suggest that the individual prosecutor, Mr. Yost, had some special animus in these types of cases that resulted in unfavorable plea offers. Counsel argued that most similar cases resulted in much more favorable plea offers. (Exhibit LL, R.T. 7/15/05 at 45-48.) He argued that in another case he defended in which the same prosecutor had prosecuted, a similar offer had been made by Mr. Yost.

MR. TERPSTRA: . . . Same offer, plead to nine and a quarter years or prior with class two with a prior and he didn't budge from that offer either. . . . Never budged from the offer.

Went to a different prosecutor, settlement conference, easily dropped another prior, pled without a prior, got a super mitigated sentence three years after Mr. Yost was off the case.

THE COURT: Was there a settlement conference in this case?

MR. TERPSTRA: Absolutely, before Judge Hauser. Mr. Yost never budged from the offer.

I don't think Mr. Yost is a bad guy. When he says he was reasonable, I never believe that Mr. Dove, compared to other defendants or circumstances of this case should have got the offer that he did but that was the offer and clearly it was better than losing at trial.

Clearly he did reject it and he was let out of custody in November by Judge Hicks on both cases and Mr. Yost says he's not numb to certain things. He's certainly numb to the situation that someone that does have an addiction like Mr. Dove and how they process information. He's not the same person as you or me, come on dummy, nine and a quarter versus 15. If you reject it, how could you be so stupid. Look at the obvious differences - -

THE COURT: I don't know what you're saying, is he not competent?

MR. TERPSTRA: He's perfectly competent. He doesn't view reality in the same ways. He's desperate. ***He kept believing through the whole thing it would get better***, I'm telling him - -

(*Id.* at 48-51 (emphasis added).)

All of this suggests that Petitioner's rejection of the plea was not a weighing of the plea versus the potential outcomes at trial (and thus dependent upon counsel's defective

advice on the priors), but was instead based upon a weighing of the plea against the potential that a better plea would eventually be forthcoming.[9]

Given the record of the proceedings in this case, the undersigned cannot conclude that there is a reasonable probability that the defective advice made the difference in Petitioner's decision to let the plea offer pass unaccepted.

## C. SUMMARY

Based upon the foregoing, the undersigned concludes that Grounds Two and Three must be dismissed as procedurally defaulted, and Ground One must be denied as without merit.

## D. CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment. The recommendations if accepted will result in Petitioner's Petition being resolved adversely to Petitioner. Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is

---

[9] Testimony from counsel or Petitioner at any habeas evidentiary hearing would have to be weighed against these statements on the record, and Petitioner suggests no reason to believe they would eliminate the reasonableness of a decision to rely instead upon the inferences from the existing record.

straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be in part on procedural grounds, and in part on the merits.

To the extent that Petitioner's claims are rejected on procedural grounds, under the reasoning set forth herein, the undersigned finds that "jurists of reason" would not "find it debatable whether the district court was correct in its procedural ruling."

To the extent that Petitioner's claims are rejected on the merits, under the reasoning set forth herein, the undersigned finds as to Ground One that reasonable jurists could find the assessment of the constitutional claims debatable or wrong.

Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Petition, a certificate of appealability should be denied as to Grounds Two and Three, and granted as to Ground One.

## IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Grounds Two and Three of the Petitioner's Petition for Writ of Habeas Corpus, filed October 17, 2008 (#1) be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that the remainder of the Petitioner's Petition for Writ of Habeas Corpus, filed October 17, 2008 (#1) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that  to the extent this Report &

Recommendation is adopted, that a certificate of appealability **BE GRANTED** only as to Ground One.

## V. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See also* Rule 8(b), Rules Governing Section 2254 Proceedings.  Thereafter, the parties have ten (10) days within which to file a response to the objections.  Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*).

DATED: May 27, 2010

_____
JAY R. IRWIN
United States Magistrate Judge

- 31 -